## SOUTHERN TRACTION CO. v. GEE.
### (No. 7803.)

(Court of Civil Appeals of Texas. Dallas. Nov. 24, 1917.)

1. RAILROADS &#8709;350(13) — COLLISION AT CROSSING—QUESTIONS FOR JURY.

In an action for injuries sustained by plaintiff when defendant's car collided with his wagon at a crossing, *held* a peremptory verdict for defendant was properly refused.

2. RAILROADS &#8709;352 — COLLISION AT CROSSING—"INDIRECT CAUSE."

A finding that the speed of defendant's car or the holes in the crossing were the "indirect" cause of the collision was insufficient to support a verdict for plaintiff, "indirect" being not direct in relation or connection; not having an immediate bearing or application; not related in a natural way, etc.

3. RAILROADS &#8709;352—INJURY AT CROSSING—SPECIAL ISSUES—INCONSISTENT FINDINGS.

Where the jury found upon special issues that the speed of defendant's car and the holes in the crossing were the indirect cause of the collision with plaintiff's wagon, and that plaintiff was negligent in not looking while approaching the crossing, a judgment for plaintiff was unwarranted, although the jury found, in answer to an issue embraced in a special charge, that the speed of defendant's car and the holes were the proximate cause of plaintiff's injuries.

4. TRIAL &#8709;349(4)—SPECIAL ISSUES—"GENERAL CHARGE."

The special charge that, if the line of defendant's railway at the time plaintiff's wagon was struck by defendant's car, approached the crossing through a cut, and that other obstructions existed along the railway, which obstructed the view of defendant's car from plaintiff, as he approached the crossing, and that defendant negligently permitted said crossing to become out of repair, and that defendant's car, which struck plaintiff's wagon, was being run at the time, and under all the conditions as they then existed, at a high and dangerous rate of speed to the plaintiff, and that one or more of said acts or omissions, if any, was or were negligence, "then you will answer the following question: Did such negligent act or acts or omissions, if they were negligent, either singly or combined, proximately cause plaintiff's injuries, if any"—was in effect a "general charge," and was inappropriate where special issues were submitted.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, General Charge.]

5. TRIAL &#8709;244(4) — INSTRUCTIONS — PROMINENCE TO PORTIONS OF TESTIMONY.

It is improper for the court to select a certain portion of the testimony, and give undue prominence thereto, which is calculated to unduly influence the jury.

6. RAILROADS &#8709;351(12)—CROSSING ACCIDENT —DOCTRINE OF EMINENT PERIL.

Where plaintiff's negligence, if any, occurred from his act in approaching a railroad crossing, a charge on imminent peril in connection with contributory negligence, in reference to plaintiff urging his mules in trying to cross the track just ahead of the car, was error.

7. RAILROADS &#8709;351(10) — COLLISION AT CROSSING—SPEED—INSTRUCTIONS.

Where the court submitted the issue whether defendant's car, approaching a crossing, "was run at a dangerous rate of speed," it erred in refusing a charge, for guidance of the jury, that, if defendant's employés were operating the car as persons of ordinary care, caution and prudence would under similar circumstances, defendant would not be liable; the law not fixing any limitations as to speed.

8. TRIAL &#8709;350(7) — CROSSING ACCIDENT — FAILURE TO SUBMIT ISSUES.

In an action for injury at a railroad crossing, evidence as to contributory negligence, in that plaintiff failed to have his team under control, when approaching the crossing, *held* to call for submission of such issue.

9. NEW TRIAL &#8709;73 — JURY FINDINGS — UNCERTAINTY.

Where the findings of the jury were conflicting on several pertinent issues, rendering their conclusions as to the controlling facts uncertain, it was error to refuse a new trial.

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Action by William Gee against the Southern Traction Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

J. L. Gammon, of Waxahachie, and Templeton, Beall & Williams, of Dallas, for appellant. Farrar & McRae, of Waxahachie, for appellee.

RAINEY, C. J. This suit was brought by appellee against appellant to recover damages for personal injuries received at a public road crossing at a place where it was crossed by appellant's track at practically right angles. Appellee was driving four mules to a wagon loaded with seed cotton, and just as he was getting across appellant's track, the rear end of the wagon was struck by a car of appellant, demolishing the wagon and injuring appellee. The collision was alleged to have been caused by the negligence of appellant, in operating its car at too great a rate of speed, the approach to the crossing being obstructed by trees and undergrowth and a cut in the embankments and the bad repair of the crossing between the rails. The appellant answered by general exception and denial, and specially the want of care on the part of appellee in approaching the crossing, and contributory negligence. The court submitted special issues to a jury, and upon return of their answers thereto judgment was rendered for appellee, from which this appeal is prosecuted.

[1] A peremptory verdict was asked by appellant and refused by the court, of which action complaint is made. We think there was no reversible error in the court's action, as

---

the evidence was such that it required the determination of the jury.

The answers of the jury to the issues propounded are complained of as not warranting the judgment rendered by the court. Among them are issues which form the basis for the second assignment of error as follows:

"The court erred in not rendering judgment for the defendant, upon the answer of the jury to special issues Nos. 3, 7, 11, and 12, which are as follows:

"To question No. 3, 'If you have answered the two preceding questions in the affirmative, then answer this question, Was the speed of said car the direct cause of the collision between it and plaintiff's wagon?' we answer, 'Indirect.'

"To question No. 7, 'If you have answered questions Nos. 4, 5, and 6 in the affirmative, then answer this question, Was the fact (if it was a fact) that there were holes or excavations in the crossing between the rails the direct cause of the collision between defendant's car and plaintiff's wagon?' we answer, 'Indirect.'

"To question No. 11, 'As plaintiff approached the crossing, and before he got so close to the track as to be in a dangerous position, could he have seen the approaching car?' we answer, 'He could at intervals.' ·

"To question No. 12, 'Would an ordinarily prudent person in the exercise of ordinary care for his own safety have looked to discover if a car was approaching from the south?' we answer, 'Yes.'

"Because the contributory negligence of the plaintiff is fully established by the great preponderance of the evidence, and found by the answers of the jury to issues Nos. 11 and 12, and because the jury failed and refused to find that the negligence alleged by plaintiff's petition was the direct cause of plaintiff's injuries."

The proposition submitted by appellant is:

"In order to recover in this case the burden of proof rested upon the plaintiff to show that the speed of the car was not only negligent, but also was the direct and proximate cause of plaintiff's injury, or that the holes or excavations in the crossing, if any, constituted negligence and were the direct and proximate cause of plaintiff's injury."

[2, 3] In order for the appellee to recover it was necessary for the jury to have found the negligence alleged, that is, the speed of the car or the holes or excavations in the crossing were the direct and proximate cause of the injury sustained by appellee. This was not done, but the jury answered that it was the "indirect" cause. "Indirect," as defined by the Century Dictionary and Cyc., is "not direct in relation or connection; not having an immediate bearing or application; not related in the natural way," etc., which is not the same meaning as direct, nor equivalent thereto. Further, the jury's answer to issue No. 7 was that, in approaching the crossing, appellee could have seen the approaching car at intervals, and that an ordinarily prudent person in the exercise of ordinary care would have looked to discover its approach, which failure shows negligence on the part of appellee, and which is inconsistent with the court's rendering judgment for appellee.

[4] But it is insisted by appellee that the jury answered the following issue affirmatively, which is embraced in the special charge and given by the court, as follows:

"You are further instructed that, if you believe from the evidence that the line of defendant's railway, at the time plaintiff's wagon was struck by defendant's car, approached the crossing, known as the McDaniel crossing, through a cut, and that other obstructions existed alongside of said line of railway which obstructed the view of defendant's car from the plaintiff and obstructed the view of the plaintiff from the operatives of said car as plaintiff approached said crossing; and you further believe that the defendant negligently permitted said crossing and its tracks to become out of repair by allowing holes and excavations to exist therein; and you further believe that defendant's car which struck the plaintiff's wagon was being run at the time and under all the conditions as they then existed at a high and dangerous rate of speed to the plaintiff; and you further believe that any one, or more, of said acts, or omissions, if any, was, or were, negligence—then you will answer the following question: Did such negligent act or acts, or omissions, if they were negligent, either singly or combined, proximately cause plaintiff's injuries, if any?"

[5] The answer to this last issue was in the affirmative, and is contradictory to those just above quoted, or, at least, is inconsistent with them, and does not justify a verdict. Besides, the said special charge is, in effect, a general charge, which is improper when special issues are submitted. La Grone v. Railway Co., 189 S. W. 99. Said charge includes a finding on part of the evidence; that is, in regard to the obstruction of the view in approaching the track. It is improper for the court to select out a certain portion of the testimony and give undue prominence thereto, as in this charge, which is calculated to unduly influence the jury. The permitting of the view to the approach to be obstructed was not itself negligence per se. It is only a circumstance to be considered in reference to the negligence in operating trains, or of contributory negligence. In the case of Railway Co. v. Rogers, 91 Tex. 52, 40 S. W. 956, where a railroad crossing was obstructed, and the trial court in its charge assumed it to be an act of negligence, the court said:

"The fact that the view of the track was obstructed would not give a right of action if the railroad company exercised such care in the operation of its train as a prudent person under similar circumstances, having due regard for the safety of those traveling upon the highway over that road, would have exercised. * * * But the question to be submitted to the jury was whether or not, under the surrounding conditions and circumstances at that place, the defendant exercised such care as a prudent person would have exercised under like conditions."

The specifying of said obstructions as one of the acts to be found by the jury in order to constitute negligence was improper.

The finding of the jury that appellee was not guilty of contributory negligence was contrary to their finding in issue No. 12, where they found that an ordinarily prudent person, in the exercise of ordinary care for his own safety, would have looked to discover if a car was approaching from the south. It was uncontradicted that a car was approaching the crossing from the south, and that appellee did not look to discover it.

[6] The charge of the court on sudden and imminent peril in connection with his charge on contributory negligence in reference to appellee urging up his mules in trying to cross the track just ahead of the car was error. The evidence shows, we think, that if he was guilty of contributory negligence it occurred from his act in approaching the crossing, and was not due to the operation of the train. Railway Co. v. Neff, 87 Tex. 304, 28 S. W. 283.

[7] The court erred in refusing the charge requested by appellant as follows:

"The law does not prescribe the rate of speed at which defendant shall run its cars at such places as that at which plaintiff was struck, and in this connection you are further charged that if the defendant's employés, in approaching McDaniel Stop at the time plaintiff was struck, was operating the car in question as persons of ordinary care, caution, and prudence under similar circumstances and conditions would have done, then you will answer special issue No. 1, No."

Special issue No. 1, requested by appellant and refused by the court, is as follows:

"You are instructed as to the law of this case touching the speed of the car that the running by the defendant of its car upon its track in approaching McDaniel Stop was authorized by law, and that the law does not impose any rule as to the rate of speed of said car."

Instead the court submitted the following issue:

"Upon the occasion of plaintiff's wagon being struck by the car of defendant company, was the car approaching said crossing under existing conditions being run at a dangerous rate of speed to persons approaching the crossing on the public road?"

The court gave the jury no guide by which they could determine what was a dangerous rate of speed. The law does not fix any limit as to how fast or how slow a train or car should be operated, but leaves it to be governed by circumstances in every case. The only rule it lays down is that, What rate would an ordinarily prudent man observe in operating a train, to be governed by circumstances of each case? The propelling of an electric passenger car over the country, is dangerous at crossings at all times at any rate of speed, and the rule just given is the only one that can reasonably be stated for the operation of railroads which serve the public. If there was any necessity for giving a charge on the speed of the train in this case, some rule should have been stated by the court by which the jury were to be governed. Railway Co. v. Harrison, 163 S. W. 332; Railway Co. v. Johnson, 59 Tex. Civ. App. 354, 125 S. W. 933; Railway Co. v. Shetter, 94 Tex. 196, 59 S. W. 533.

[8] The fifteenth assignment is based upon the refusal of the court to present the following issue:

"Did plaintiff, in approaching said crossing, and in going on the same, permit his lines to hang loose in such a manner that he had no proper control of his team? If you have answered the foregoing question in the affirmative, then answer the following question: Would an ordinarily prudent person, in the exercise of ordinary care for his own safety, have approached and driven upon said crossing with his lines in such condition? If you have answered the two questions above in the affirmative, then answer the following: Did said act of plaintiff in permitting his lines to hang loose as he was approaching and going upon said crossing directly cause, or contribute to cause, the collision of the interurban car with the plaintiff's wagon?"

Under this assignment is submitted the following proposition, viz.:

"There being evidence that plaintiff, in approaching the track at the crossing, did so in an unconcerned manner, and with his lines hanging loose so that he could not promptly control his team, the court, upon timely request, should have, upon the issue of negligence or contributory negligence, submitted this matter to the jury by appropriate questions, and its refusal to do so constituted reversible error."

One witness testified, in effect, that he saw the man in the wagon as he approached that crossing after the car began to whistle; that the lead mules were some five or eight feet back from the crossing at this time. The mules had not gotten to the rails; that when he looked around and saw the location of the team the man on the wagon was leaning back on his right elbow, but changed his position and commenced gathering up his lines. They seemed to be loose in his hands, and he pulled them up, all four lines in his left hand. At this time the wheel mules were just getting upon the track. Witness says that before the lead mules got to the crossing, and between the time that the man grabbed his lines, the man was leaning back in his wagon with his elbow in the cotton; that when he heard the car whistling and noticed the team it was still coming ahead, the negro leaning back in his wagon. Witness said he did not know what the negro was doing with the lines at the time, but the team got faster, but that he guesses he was slashing them with the lines. That negro raised up quick.

The appellant having pleaded contributory negligence on the part of appellee in approaching the crossing, and "that the same was negligent, careless, and reckless, and that plaintiff failed to have his team under control so as speedily to have stopped his wagon," etc., it was sufficient to admit the evidence, and the evidence was such that it called for the submission of the issue requested, and it was error for the court to refuse to do so. Railway Co. v. Hall, 98 Tex. 480, 85 S. W. 786.

[9] In view of the findings of the jury on the various issues presented, we are of the opinion the judgment should not be permitted to stand. On several pertinent issues we construe the findings of the jury to be conflicting, which render their findings uncertain as to what their conclusions were on the controlling points as to appellant's liability. Such being the case, the court erred in not granting a new trial.

The judgment of the court below is therefore reversed and cause remanded.