**TEXAS & N. O. R. CO. v. HARRINGTON et al.   (No. 219-3348.)**

(Commission of Appeals of Texas, Section B. Nov. 30, 1921.)

**1. Trial ⬤⇒215—Facts not to be grouped in instruction in cause submitted on special issues.**

Where defendant railroad pleaded contributory negligence on part of decedent killed at crossing while driving an automobile, and at its request the case was submitted on special issues, court properly refused to group the facts and special charges and so submit them as to call for a general verdict, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a.

**2. Trial ⬤⇒253(4) — Instruction as to negligence at crossing held erroneous as withdrawing issue of proximate cause.**

In an action for death at crossing in collision of automobile and train, a charge *held* erroneous as withdrawing from the jury the right to determine whose negligence was the proximate cause of the accident, or at least as confusing this point to the material prejudice of the plaintiff.

**3. Railroads ⬤⇒350(32)—Proximate cause of injury for jury.**

Where railroad and automobilist are each guilty of negligence at a crossing, it is a question of fact for the jury as to which negligence is the proximate cause of the injury.

**4. Railroads ⬤⇒338 — Doctrine of discovered peril defined.**

The doctrine of discovered peril applies where plaintiff is guilty of contributory negligence which would preclude recovery but for his negligent injury after his peril has been discovered by the train operatives, and when their use of means at hand would have avoided the injury.

**5. Railroads ⬤⇒333(1)—Automobilist crossing in front of train not necessarily negligent.**

A finding that in the exercise of ordinary care the approach of a train would have been discovered in time to have avoided a collision would not alone be sufficient to bar recovery, as there must be a further finding that an ordinarily prudent person under the same or similar circumstances would not then have attempted to cross in front of the train.

**6. Railroads ⬤⇒350(30)—Automobile driver's contributory negligence in crossing in front of train held for jury.**

In an action for death of automobilist at railroad crossing, whether deceased was guilty of contributory negligence in attempting to pass in front of the train *held* for the jury.

**7. Appeal and error ⬤⇒930(3)—Finding assumed to support decision.**

Jury having found in answer to special issue that deceased was not guilty of contributory negligence in any respect, it must be assumed that all other mooted issues of facts bearing thereon, but not submitted, were decided against the defendant.

**8. Railroads ⬤⇒327(1)—Failure to look and listen not ipso facto negligence.**

Failure of an automobilist to look and listen for an approaching train at a crossing is not ipso facto such negligence as to preclude recovery.

**9. Railroads ⬤⇒335(1)—Violation of statute by automobilist must be proximate cause of injury to bar recovery.**

While the violation of a statute as to speed of automobiles is negligence per se, such negligence does not preclude a recovery for negligence of a railroad, unless it is the proximate cause of the injury.

**10. Appeal and error ⬤⇒1114—Excessiveness of damage question of fact for Court of Civil Appeals and cause remanded to it where no decision thereon was made.**

The excessiveness of damage for personal injuries is a question of fact for the Court of Civil Appeals; and, where such court reverses judgment on other grounds, and does not pass on an assignment that damages are excessive, the Commission of Appeals, on reversing the judgment of the Court of Civil Appeals, will not affirm the judgment of the trial court, but will remand the cause to the Court of Civil Appeals so that they may pass upon the assignment as to excessive damages.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Alice Harrington and others against Texas & New Orleans Railroad Company. From a judgment of the Court of Civil Appeals (209 S. W. 685), reversing a judgment in their favor, plaintiffs bring error. Reversed and remanded to Court of Civil Appeals.

Orgain, Butler, Bolinger & Carroll, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for plaintiffs in error.

Geo. E. Holland and J. T. Adams, both of Orange, for defendant in error.

POWELL, J.  About 8 o'clock on the morning of October 1, 1917, Claude Harrington and Herbert Peveto were leaving Orange, Tex., in a Ford car. They drove out Park street, and when crossing the main line track of the Texas & New Orleans Railroad Company, intersecting said street, their automobile was struck by the locomotive of a westbound passenger train of the railroad company aforesaid, and both men killed almost instantly. Shortly thereafter the widow of Harrington, for herself and as next friend for her four minor children, brought this action for damages in the district court of Orange county, alleging that the death of her husband was due to the negligence of the railroad company in the following particulars, to wit:

"(1) The failure of the train to blow any whistle or ring any bell of the locomotive in approaching said crossing.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(2) The failure of the agents, servants, and employees of said defendant in the operation of said train to keep a proper lookout for persons traveling said street, or about to cross said railroad crossing.

"(3) The failure to provide any means of warning to travelers using said street, such as gates, bells, or flagman.

"(4) That the train was running at an excessive rate of speed, and at a rate of speed prohibited by the city ordinance of the city of Orange, which ordinance prohibited the running of trains at more than six miles an hour."

The railroad company answered by general demurrer, special exception, general denial, and pleas of contributory negligence upon the part of deceased, and inevitable accident.

A trial was had before a jury, and the court, upon request of counsel for the railroad company, submitted the case to the jury upon special issues. The issues submitted by the court with the jury's answers thereto were as follows:

"Question No. 1: Do you believe from the evidence that the train that struck the deceased, Claude Harrington, in approaching the crossing at the time he was struck, gave any signal by the blowing of a whistle or the ringing of a bell? You will answer this question Yes or No."

The jury answered: "No."

"Question No. 2: Do you believe that the train that struck the deceased, Claude Harrington, at the time it struck him, was running at an excessive rate of speed? You will answer this question Yes or No."

The jury answered: "Yes."

"Question No. 3: What was the rate of speed the train that struck Claude Harrington was traveling at the time it struck him? Answer this question by stating in writing the number of miles per hour.

The jury answered: "Thirty miles per hour."

"Question No. 4: Do you believe from the evidence that the defendant, Texas & New Orleans Railroad Company, at the time of the injury causing the death of Claude Harrington, maintained at its crossing on Park street any gates, bells, or flagmen to warn travelers of approaching trains? Answer this question Yes or No."

The jury answered: "No."

"Question No. 5: Do you believe from the evidence that such act or acts or such omission or omissions was the proximate cause of the death of Claude Harrington? Answer this question Yes or No."

The jury answered: "Yes."

"Question No. 6: Do you believe from the evidence that the deceased, Claude Harrington, did any act or failed to do any act that contributed to the injury causing his death? You will answer this question Yes or No."

The jury answered: "No."

"Question No. 7: Did any act or omission of the deceased, Claude Harrington, which immediately preceded the injury that resulted in his death, amount to negligence on his part as that term has been defined to you in this charge? Answer this question Yes or No."

The jury answered: "No."

"Question No. 8: Do you believe from the evidence that such act or omission on the part of the said Claude Harrington was the proximate cause of the injuries received by him? Answer Yes or No."

The jury answered: "——."

"Question No. 9: What sum of money, in your judgment, if paid now, would reasonably compensate the plaintiff for the injuries sustained because of the death of said Claude Harrington? You will answer this question by stating the amount in figures."

The jury answered: "$35,000.00."

"Question No. 10: Of the amount found by you, what amount do you apportion to the plaintiff Alice Harrington? What amount do you apportion to Ruby Harrington? What amount to Viola Harrington? What amount to Rosalie Harrington? What amount to Edna Harrington, and what amount to Robert Harrington? You will answer this question as follows: To Alice Harrington, ——; to Ruby Harrington, ——; to Viola Harrington, ——; to Rosalie Harrington, ——; to Edna Harrington, ——; to Robert Harrington, ——."

The jury answered: "To Alice Harrington, $15,000.00. To Ruby Harrington, $5,000.00. To Viola Harrington, $5,000.00. To Rosalie Harrington, $5,000.00. To Edna Harrington, $5,000.00. To Robert Harrington, nothing."

Robert Harrington was the aged father of the deceased.

Judgment was entered upon the answers of the jury in conformity therewith. The railroad company duly perfected its appeal therefrom to the Court of Civil Appeals at Beaumont, where the judgment of the trial court was reversed and remanded because of its failure to give two special charges requested by the company, and which will be hereafter discussed. See 209 S. W. 685. Both parties filed motions for rehearing in the Court of Civil Appeals, both of which were overruled. Each of the parties applied to the Supreme Court for a writ of error, and the application of Mrs. Harrington was granted. Because of that fact the application of the railroad company was also granted.

[1] The trial court, in its charge, gave certain explanatory instructions, including a definition of "negligence" and "proximate cause." The two special charges, the refusal of which by the trial court caused a reversal of its judgment by the Court of Civil Appeals, read as follows:

"(1) You are instructed that if you believe from the evidence that said Claude Harrington approached said crossing on the occasion of his death without looking or listening for the approach of a train, and you further believe from the evidence that by looking or listening he would have seen or heard said train in time to have prevented his injury and death, and you further believe that a man of ordinary prudence would, under the same or similar circumstances, have looked or listened for the approach of a train, then you are instructed to answer questions Nos. 6, 7, and 8 Yes, and this would be true even though you may believe

from the evidence that there were no whistles or other signals given to announce the approach of the train, and that the train was being operated in a negligent manner.

"(2) You are instructed that if you believe from the evidence that the view of the crossing and the approaching train were either wholly or partially obstructed, and you further believe that the deceased did not reduce the speed of his automobile to 6 miles an hour or less at a point not nearer than 30 feet from said track, and that such failure was the proximate cause of his death, you will answer questions Nos. 6, 7, and 8, Yes, and this would be true even though you believe from the evidence that no signals were given announcing the approach of the train, and that the train was being otherwise operated in a negligent manner."

We think the trial court properly refused to submit said charges to the jury. The railway company asked the court to submit the case upon special issues. After this, instead of requesting the court to submit in the usual way the facts which affected its defenses, the company undertook to group its facts and special charges and so submit them as to obtain a general verdict from the jury. That it cannot do. Such a practice is not only in violation of article 1984a, Vernon's Sayles' Revised Civil Statutes of Texas, but has been clearly ruled out by appellate courts in Texas for years. Numerous authorities could be quoted from, but we content ourselves with a review of the very recent case of Worden v. Kroeger (Civ. App.) 184 S. W. 583, which we consider exactly in point. In that case the trial court, in submitting a cause upon special issues, also gave to the jury a special charge as follows:

"You are charged that, if you believe from the evidence in this case that the plaintiff had the capacity and opportunity to know and appreciate the dangers in reference to using the machine without a cut-off guide, and if you believe by the exercise of that ordinary circumspection that an ordinarily prudent person would have used in the same circumstances he would have known of the dangers in reference to using the machine without a cut-off guide, and he remained in the service of the defendant and used the machine without a cut-off guide, and was injured by reason thereof, and that the same was dangerous, as a matter of law, he assumed the risk, and would not be entitled to recover, and, so believing, you must return verdict in favor of the defendant on the issues submitted to you by the court in reference thereto."

The Court of Civil Appeals, in passing upon said charge, spoke as follows:

"It is improper to submit a special charge calling for a general verdict where the case is submitted upon special issues. H. & T. C. Ry. Co. v. Kincheloe, 56 Tex. Civ. App. 123, 119 S. W. 905; Moore v. Pierson, 100 Tex. 114, 94 S. W. 1132; Id., 93 S. W. 1007. And the writer is of the opinion that the additional special charges with those in the original charge makes the charge subject to the criticism that it gave undue prominence to the issues mentioned, and, if there was any material conflict in the evidence adduced upon the issues of assumed risk and contributory negligence, it would constitute reversible error. The other members of the court express no opinion in this respect, for the reason that we all agree that under the facts in this case the cause must be affirmed, because he admits that he knew of the defects in the table and the machine he was operating, and realized the dangers attendant upon its operation in the condition it was; therefore assumed the risk."

That case finally reached the Supreme Court of Texas on a writ of error and was referred to Section A of the Commission of Appeals, where Judge Taylor wrote an opinion agreeing with the Court of Civil Appeals that the giving of the special charge was improper. He recommended a reversal of the case, and further held as follows:

"We cannot concur in the view of the Court of Civil Appeals that there was no evidence tending to show that the rough table top caused, or contributed to cause, plaintiff's injury; but, regardless of whether there was such evidence, the error in giving the special charge cannot be ignored."

The judgment recommended by Judge Taylor, of the Commission of Appeals, was adopted by the Supreme Court and entered as its judgment. His holding was also approved by that court. See 219 S. W. 1094.

The Court of Civil Appeals, in the case at bar, realized the force of the authority just reviewed by us, and attempted to distinguish it. That court says that the special charge in the case of Worden v. Kroeger, supra, directed a verdict for the defendant, if the jury found affirmatively on the issues submitted in said charge, whereas, the jury in the instant case were only told to answer Yes, to questions 6, 7, and 8 if a certain group of facts were found to exist. We are at a loss to understand this method of reasoning by the Court of Civil Appeals. By answering Yes to questions 6, 7, and 8, the jury would have found deceased guilty of a failure of duty; that said failure was negligence; that said negligence was the proximate cause of his death. Upon such findings, a judgment for the railroad company would have necessarily followed. The charge in this case just as effectually directed a verdict for the railroad company in event of certain findings of fact, as did the charge in the case of Worden v. Kroeger direct one for the defendant. There seems to us to be absolutely no difference in the two cases.

The Court of Civil Appeals says that if this case had been submitted on a general charge the court would have instructed the jury that the deceased was guilty of contributory negligence, if the facts enumerated in said special charge were found to exist. That is exactly what these special issues did in requiring an affirmative answer to ques-

tions 6, 7, and 8. It is unquestionably true that defendants, where general charges are used, have a right to group and present to the jury in an affirmative way the facts constituting contributory negligence, but it must be remembered that the fundamental purpose of a special issue is just the opposite. The Court of Civil Appeals seem to have fallen into error because of its failure to distinguish between the two methods of submitting cases. These methods are widely different. We refer to other authorities sustaining our views, as follows: I. & G. N. Ry. v. Reek (Civ. App.) 179 S. W. 700; Railway v. Jones, 175 S. W. 488; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1134; Cole v. Crawford, 69 Tex. 124, 5 S. W. 646; Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Moore v. Pierson (Civ. App.) 93 S. W. 1007; Express Co. v. Rudman (Civ. App.) 145 S. W. 268; Hengy v. Hengy (Civ. App.) 151 S. W. 1133; Calvin v. Neel, 191 S. W. 794; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 905; Coal Co. v. Wise, 44 Tex. Civ. App. 369, 99 S. W. 410; Railway v. Kincheloe, 56 Tex. Civ. App. 123, 119 S. W. 905; Traction Co. v. Gee (Civ. App.) 198 S. W. 993; La Grone v. Railway, 189 S. W. 99.

Article 1984a of Vernon's Sayles' Revised Civil Statutes of Texas reads as follows:

"In all jury cases the court, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately, and without being intermingled with each other, so that each issue may be answered by the jury separately. In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and the court may submit said cause upon special issues without request of either party, provided that if the nature of the suit is such that it cannot be determined on the submission of special issues, the court may refuse the request to do so, but the action of the court in refusing may be reviewed on proper exception in the appellate court, and this article shall be construed in connection with article 1985 of chapter 14, title 37, Revised Statutes."

This statute contemplates the submission of specific questions of fact. In this connection we quote from Justice Williams, of the Supreme Court of Texas, in Case of Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132, as follows:

"It is insisted that plaintiff did sufficiently request the submission of the issues arising upon the second cause of action alleged, but we cannot agree that he complied with the statute. The request was to submit the whole cause upon a general charge invoking a general verdict. This was wholly inapplicable to a cause submitted on special issues. When the latter method of submission was decided on, it was the province of the charge and the special requests to formulate specific questions of fact to be submitted to the jury, and it was to such questions that the statute intends the requests to be addressed."

If counsel for the railroad company had been dissatisfied with the court's definition of "negligence" and "proximate cause," they could, in addition to objecting to the court's definition, have prepared what they deemed correct definitions of said legal terms, and asked the court to give them to the jury. If they had been erroneously refused, a reversal of the case would have followed. But the special charges now under consideration cannot be justified upon the ground that they are in the nature of explanations and definitions of legal terms. They show the contrary on their face, and, speaking of this rule of law, the Court of Civil Appeals, in the case of Dallas Hotel Co. v. Fox, 196 S. W. 647, says:

"Appellant complains under the twelfth, thirteenth, fourteenth, and fifteenth assignments that the court erred in refusing to give special charges in connection with the issue of contributory negligence submitted to the jury. These charges recite the facts alleged which appellant claims showed the contributory negligence of Fox in the different ways set out above. The rule with reference to submitting charges in connection with special issues is announced by Hodge, Justice, in T. & F. S. Ry. Co. v. Casey, 172 S. W. 729, and by Connor, Justice, in J. M. Guffey Petroleum Co. v. Dinwiddie, 182 S. W. 447, and is in substance that the court should not submit charges, either general or special, in connection with the special issues, except for the purpose of giving the jury explanations and definitions of legal terms used, and which are necessary to enable the jury to understand the meaning of such terms. Vernon's Sayles' Civil Statutes, art. 1984a. General charges of a kind not specified by the statute, submitted in connection with special issues, tend to confuse the jury, and should not be given. Calvin v. Neel, 191 S. W. 791. None of the special charges requested, and the refusal of which is complained of by these assignments, were explanations or definitions within the meaning of the statute referred to."

It follows from what has been said that we think the Court of Civil Appeals erred in reversing this cause, because of the refusal of the trial court to give the two special charges in question. We think both of them were properly refused by the trial court.

[2] The special charges above discussed are attacked by counsel for Mrs. Harrington on various other grounds. In view of our holding above, we think any further discussion unnecessary, although inclined to agree with certain other assignments in this connection. We doubt if these charges could have been properly submitted to the jury even if the case had gone to them upon a general charge. In this connection we do desire to call special attention to the first

special charge hereinbefore copied, and being the one involving the alleged failure of deceased to look and listen for an approaching train before going upon the crossing. In our opinion, this charge is erroneous, in any event, because it withdraws from the jury the right to determine whose negligence was the proximate cause of the death of Harrington. If it does not actually do that, it, at least, confuses this important point to the material prejudice of Mrs. Harrington.

[3] Where a plaintiff and defendant are each guilty of negligence, it is a question of fact for the jury as to which negligence is the proximate cause of the injury. That rule is well settled. See, Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Trochta v. Railway Co., 218 S. W. 1038. Under the special charge in question the jury would likely not have understood their right to do this.

[4] The Court of Civil Appeals holds that if Harrington could have discovered the approach of the train in time to have prevented his death, and did not do so, the railroad company could not be held liable. They say that such negligence is necessarily the proximate cause of the injury. We do not think so, and we are sure the jury should have been given a chance to pass upon this question. Suppose, for instance, without looking for the approaching train, Harrington had negligently, in the view of the jury, attempted to cross in front of the train. On the other hand, suppose, at the very same moment, the approaching train, in violation of a city ordinance, negligently rushed upon and killed him. The jury might well determine that, although both were negligent, the railroad company's negligence proximately caused the injury. The decision of that question is with them alone. Applying this theory to the very facts in the case at bar, we find that Harrington almost made it across, even though the train was making 30 miles an hour, when the law limited its speed to 6 miles. In fact, he would have made it across in spite of the train's speed but for a slight accident to his car. There is some doubt as to whether or not his attempt to cross the track, even if he had discovered the train, would be negligence. Again, an ordinarily prudent person, under the same circumstances, might have attempted to cross without looking for the train, but for the sake of argument let us admit that he would have been negligent in doing so. Then, after we find Harrington stranded on the track, what does the testimony show? The fireman said he realized Harrington's danger when 200 feet away from him. He called to the engineer at once, but, running rapidly as they were, they could not stop in time to save Harrington. At the same time the engineer admitted that if he had been running only 6 miles an hour he could have stopped his train in 50 feet, or 150 feet before he struck Harrington. We only mention this to show that, even under the facts enumerated in this special charge, the jury would likely have found that the injury was proximately caused by the unlawful speed of the train, and that the same would have been avoided entirely in spite of deceased's negligence, if any, had the ordinance been complied with. Under the special charge in question, such a finding was impossible, and for that reason said charge was erroneous in our judgment. We do not mean to be understood as invoking the doctrine of discovered peril, for that has not been pleaded, and is not in the case. That applies where a plaintiff is guilty of contributory negligence, which would preclude recovery but for his negligent killing after his peril had been discovered by the train operatives, and when their use of the means at hand would have avoided the injury.

[5] Again, we think before said charge should have been given, and the Railroad Company absolved from liability, certain additions to the same would have been necessary. After finding that, in the exercise of ordinary care, the approach of the train would have been discovered in time to avoid the injury, the jury should have been told they must further find that an ordinarily prudent person, under the same or similar circumstances, would not then have attempted to cross in front of the train. If they have so found, then his attempt to cross, under the circumstances, would have been the proximate cause of the injury, and the railroad company could not have been held liable.

A person nearing a railroad crossing and seeing an approaching train could, by standing still, avoid injury. That is the absolutely safe course in the premises. But we do not believe that an ordinarily prudent person, in the exercise of ordinary care, would under all circumstances, delay his crossing the track until an approaching train had passed. In fact people continually pass in front of moving trains and automobiles. Whether a person doing so would be guilty of negligence would depend upon all the circumstances present at the time. In this connection we quote as follows from the case of Johnson v. Railway Co., 2 Tex. Civ. App. 139, 21 S. W. 274:

"In deciding as to whether or not George Johnson was guilty of negligence in attempting to cross the track in front of the car, it will be necessary for the jury, under proper instructions, to take into consideration all the attendant circumstances, such as the distance the car was from the crossing at the time the attempt was made, the speed at which it was coming, and also the kind of car."

[6] In the case at bar, the Court of Civil Appeals says:

"There is abundant testimony in the record to warrant the jury in believing that the train

could not have been seen more than 350 feet from the crossing, a distance which the train would have traveled in less than seven seconds."

Suppose the deceased had seen this train 350 feet, or more, up the track, and had not realized its unlawful rate of speed, but had felt justified in assuming that it was not being operated in excess of the speed provided by the city ordinance, he might, in the exercise of ordinary care, have attempted to cross the track ahead of the train. We do not think such an attempt would be contributory negligence as a matter of law. As to whether or not it was such negligence was a question of fact for the jury. As sustaining our views in this connection we refer also to the following authorities: Southern Traction Co. v. Gee, 198 S. W. 993; Railway Co. v. Hall, 98 Tex. 480, 85 S. W. 786.

A special charge, almost exactly in point with the one at bar, was held improper in case of Railway Co. v. Melville (Civ. App.) 87 S. W. 863. In that case, the court says:

"The eighth assignment predicates error upon the refusal of the court to give the jury the following instruction: 'Failure to ring the bell did not excuse the plaintiff from the duty to exercise ordinary care on his own part for his own safety; hence if you believe from the evidence that a man of ordinary prudence would, under the same or similar circumstances, before entering on the track where the plaintiff was injured, have looked to see if any car or engine was approaching from the west, and that, if plaintiff had so looked, he would have discovered the approaching car in time to have prevented the injury to himself, then you are instructed to find a verdict for the defendant.' We are inclined to think this charge was upon the weight of the evidence. The effect of the failure of appellant's employés to comply with their duty to ring the bell before starting the engine upon appellee's act in crossing the track without looking to see if the engine was in motion should have been left to the determination of the jury, and it would have been clearly wrong for the court to have told the jury that the failure to ring the bell should not be considered by them in deciding the question of appellee's negligence. If this was not the effect of this charge, its meaning is doubtful, and the jury might have so construed it. The charge was objectionable for the further reason that it fails to submit the issue of proximate cause in connection with the act of appellee upon which contributory negligence is predicated. Railway Co. v. Pendleton, 70 S. W. 996, 6 Tex. Ct. Rep. 239; Railway Co. v. Votaw, 81 S. W. 130, 10 Tex. Ct. Rep. 537; Cement & Lime Co. v. Lee, 82 S. W. 306, 11 Tex. Ct. Rep. 16."

Judge Pleasants, in the opinion just quoted from, cites three cases at the end of our quotation. They are in point. In each of said cases, a writ of error was refused by our Supreme Court. Both special charges in question here are subject to certain of the objections mentioned by Judge Pleasants in his opinion. The trial court would have properly refused them, in our judgment, even if the case had been submitted under a general charge.

The railroad company, in its petition for writ of error, seriously contends that the trial court should have instructed the jury to return a verdict in its favor. We think the Court of Civil Appeals correctly overruled these contentions. In the first place, the railroad company assumes as true a number of facts which were not established by the evidence. We have a finding of the jury that the deceased was guilty of no conduct which contributed to the injury. This general finding was all-inclusive. If the railroad company wanted to ask specific findings on mooted issues of fact, which were material, they should have asked the court to submit them. Not having done so, they cannot complain now. Article 1985 Vernon's Sayles' Revised Civil Statutes of Texas. For instance, the jury may have decided that the witness, Stewart, was not present at all when the accident occurred. There was evidence warranting such a finding. Again, they may have found that in approaching the crossing the deceased was maintaining a speed of only 6 miles an hour, and therefore not violating the act of 1917, which requires automobiles, in approaching a crossing wholly or partially obstructed, to reduce the rate of speed to 6 miles an hour. The witness Dennis Lipscomb testified that he saw the boys in their automobile just two blocks from the crossing, and traveling in that direction at a rate of 6 or 7 miles an hour. In order to settle this matter, the railroad company could have asked a special issue to determine at what rate of speed the boys were traveling. It did not do so.

[7] The jury having found that the deceased was not guilty of negligence in any respect, it is reasonable to assume that all these issues were decided by the jury against the contention of the railroad company, and it would seem that the special charges which attempted to apply the law of proximate cause were largely immaterial anyway. If there was no negligence, under the facts, then there was no necessity to inquire further to see whether or not proximte cause applied.

[8] But, even if it be assumed that Harrington, before crossing the track, did not stop, look, and listen for an approaching train, the railway company could still be held liable. Much has been written on this proposition, but the courts have never held that failure to look and listen is, ipso facto, such negligence as to preclude recovery. A very recent authority in this connection is the case of Trochta v. Railway Co., 218 S. W. 1038. In that case the jury found that before driving upon the crossing, deceased did not look, listen, or do any other act to discover the approaching train, but that such failure did not constitute negligence on his part. Upon the strength of the first of said

findings, the Court of Civil Appeals held that the deceased was guilty of contributory negligence as a matter of law, and could not recover. That court also held the plaintiff not entitled to recover upon the theory of discovered peril. The case reached the Supreme Court on writ of error, and, being referred to Section A of the Commission of Appeals, the opinion was written by Judge Strong, who waived a discussion of contribtory negligence of the deceased, but held the company liable on the theory of discovered peril. Chief Justice Phillips, of our Supreme Court, in passing upon Judge Strong's opinion, held as follows:

"Under the facts of this case there is in our opinion no warrant for not applying to it the general rule prevailing in this state, that the failure of one about to go over a public railroad crossing to look and listen for an approaching train, does not, of itself, constitute negligence as a matter of law. Here, the question as to whether, under all of the circumstances, Trochta was guilty of negligence in not looking or listening for the train, was for the jury. The jury determined it against the defendant.

"For this reason, as well as that announced in the opinion of the Commission of Appeals, the judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed."

The physical facts around and near the crossing in the Trochta Case were very similar to those at the crossing in the case at bar. Consequently, even if Harrington had not looked or listened for an approaching train before crossing the track, such failure did not, as a matter of law, relieve the railroad company of liability. The jury alone could do that. They decided this issue against the company.

It is not necessary for us to pass upon the application of Acts 1917, c. 207, § 17 (Vernon's Ann. Pen. Code Supp. 1918, § 820l), requiring automobiles to maintain a 6-mile speed limit in approaching certain crossings. Even if it was applicable here, and had been violated by Harrington, the railroad company would still be liable for his death, unless the jury had found that such negligence was the proximate cause of the injury. That the jury did not do. On the contrary, they found that the negligence of the railroad company, in three respects, constituted the proximate cause of the injury.

[9] While the violation of a statute would be negligence per se, such negligence would not preclude a recovery unless it also be found to be the proximate cause of the injury. The Supreme Court of Texas, in the case of Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S. W. 363, in an able opinion by Justice Greenwood, has very recently held as follows:

"There is no doubt that it is essential to the maintenance of an action for damages for a personal injury, founded on the violation of a statute, to establish, not only a violation of the statute, but that the violation was the proximate cause of the injury. Though the violation of the statute would be negligence per se, the action would fail without a showing of proper causal connection between the negligence and the injury. Shearman & Redfield, Law of Negligence (Street's Ed.) § 27; Texas & P. Ry. Co. v. Bigham, 90 Tex. 225, 38 S. W. 162; Spokane & Inland R. R. v. Campbell, 241 U. S. 510, 60 L. Ed. 1125; Stirling v. Bettis Mfg. Co., 159 S. W. 916; Elk Cotton Mills v. Grant, 140 Ga. 727, 48 L. R. A. (N. S.) 656, 79 S. E. 836. It follows that there was the same necessity for a proper application of the thoroughly settled law of proximate cause in this case as in the ordinary negligence case involving no violation of a statute."

This was peculiarly a fact case for the jury. They have exercised their privilege and answered the issues against the railroad company.

[10] We have carefully considered the record and all assignments, and are of the opinion that the case was tried without error. We would recommend an affirmance of the judgment of the district court but for the status of the railroad company's assignment of error, which attacks the judgment as being excessive in amount. This is a question of fact for the Court of Civil Appeals. In its opinion, on rehearing, that court said it was expressing no opinion on that assignment of error. Therefore we think the case should be remanded to the Court of Civil Appeals, so that they may pass upon that assignment, and, if same is overruled, affirm the judgment of the district court.

For the several reasons stated, we recommend that the judgment of the Court of Civil Appeals be reversed, and the cause remanded to that court to pass upon the assignment last above referred to.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.