## CHAPIN v. BURKS et al.

### No. 669.

Court of Civil Appeals of Texas. Eastland.

Feb. 21, 1930.

Rehearing Denied April 11, 1930.

G. E. Smith, of Comanche, for appellant.

Callaway & Callaway, of Brownwood, for appellees.

FUNDERBURK, J.

This suit as originally brought was one by O. C. Chapin against P. L. Burks and Putnam Supply Company for the conversion of certain oil-well casing. As a basis for a claim of exemplary damages it was alleged of the acts claimed to constitute a conversion that same were "unlawful, wilful, wanton and with the fraudulent intent to deprive the plaintiff of the value of said property, defendants knowing that said property did not belong to them or either of them, and knowing they had no lawful claim or right to seize said property and so retain and appropriate

same." Actual damages for the value of the casing was claimed in the sum of $1,731 and exemplary damages in the sum of $2,000. The Putnam Supply Company, in addition to a general denial, pleaded a cross-action, alleging that Chapin and Burks were jointly and severally indebted to it for goods, wares, and merchandise of the price and value of $1,302.31, an account showing the items being attached as an exhibit to the pleading. A drilling contract between Chapin and Burks was alleged, by which a well having been drilled to a depth of 1,500 feet under one contract between said parties was agreed to be drilled deeper, the subsequent agreement providing that Burks was to furnish, in order to complete the drilling of said well, his drilling machine and such tools, lines, and other drilling material and equipment as he already had, and all labor and fuel, and said O. C. Chapin was to furnish any tools, lines, cables, and other material and drilling equipment necessary to carry on the work that Burks did not already have; that Chapin authorized and instructed Burks to purchase same, and contracted with it to sell same to himself and Burks, the items to be charged to Burks' account, and plaintiff and Burks to be liable for the payment thereof. It was further alleged that the account represented merchandise purchased under said agreement; that the casing, for the conversion of which plaintiff sued, had been delivered to it by Burks under the belief that the latter was the representative of Chapin, with authority to manage the business and to settle the indebtedness incurred, and therefore received the casing and credited the value thereof upon the account. The prayer was that, if it be held liable for the plaintiff's claim for conversion, it have judgment against plaintiff and Burks for $1,302.31, and that said amount or so much thereof as may be necessary to extinguish plaintiff's recovery be set off against any amount recovered by plaintiff.

Defendant Burks answered, among other things alleging the contract between himself and Chapin to be that plaintiff was to pay him for day work for himself and his well-drilling machinery and the labor that defendant had to employ to drill the well the sum of $50 per day, he agreeing to work at said drilling under the directions, and so long as plaintiff wished him to do so. He further alleged that plaintiff agreed to pay him what he necessarily spent for casing crew hire, for digging slush pit, for necessary hauling, and for other necessary expenses, such as the hire of fishing tools and extra supplies for his drilling machinery. He alleged that one part of the agreement was that plaintiff would furnish such extra drilling and sand lines and other necessary equipment for the rig necessary to enable him to drill the well to the desired depth; that, acting

under the contract, he had performed labor and purchased necessary supplies, labor, and service in the aggregate amount of $6,033.56, which included an account amounting to $1,027.51, acknowledged to be due to Putnam Supply Company. The pleading acknowledged payment of the whole amount due, with the exception of $1,274.66. Burks prayed for judgment against Chapin in the sum of $1,314.66, including said balance of $1,274.66, and an added item for damages of $75; the statement of the aggregate being evidently a mistake. It was further prayed that such amount, or so much thereof as necessary to extinguish plaintiff's recovery, be offset against same.

Plaintiff, by supplemental pleading, in reply to the pleadings of both the defendants, in addition to exceptions, specially denied that he ever agreed to become personally liable for the extra drilling equipment and materials required by Burks to finish the well, or furnished by Putnam Supply Company, other than such as he had bought and paid for, and which were not included in the account. It was further alleged that the obligation to pay $50 per day was based upon one tower of twelve hours a day, and that the defendant had worked not exceeding ten and one-half hours per day, on account of which the claim for $4,725 for ninety-four and one-half days work should be not exceeding $4,135.50; that four days' time was lost in a futile endeavor to sink an oversize slush bucket, in consequence of which a credit of $200 was claimed; that $25 was the reasonable amount due for hauling casing, for which defendant in his account claimed $50. It was specially alleged that in the material bill was a drilling line for which $714 was charged, which, at all events, was never the obligation of plaintiff. Another claim was that, in making the contract by which plaintiff agreed to pay $50 per day for drilling, it was represented that one driller's wage was $12, which was afterward discovered to be $10 per day, in consideration of which $160 offset or credit was claimed. Still another claim was that the same driller had not worked during fourteen days, for which $168 credit was claimed. Yet another claim was that Burks was under contract when the well was finished to pull the casing and plug the well, which he failed to do, and which he could have done in about one and a half days time, in consequence of which plaintiff incurred an indebtedness of $729 in having that work done, which damages were claimed as an offset against the claim of Burks. It was the contention of plaintiff that he had overpaid Burks all that he had owed him.

Burks, in a supplemental answer, alleged that, when the well had reached a depth of 2,865 feet, and had struck salt water, plaintiff went away without leaving any directions as to plugging the well, and, under an

alleged custom to pay shutdown time, claimed $25 a day for twenty-five days, during which his drilling machinery was idle, and sought to absolve himself from the obligation to pull the casing and plug the well by reason of alleged negligence of Chapin in going away where he could not be communicated with, and failing to give instructions.

The case was tried with a jury. In answer to special issues, the jury found that the value of the converted casing was $1,200; that Chapin agreed with Burks that he would pay for all necessary well-drilling equipment that the latter should purchase to be used in the drilling and completion of the well; that Chapin agreed with Putnam Supply Company that he would pay for all such well-drilling equipment; that Chapin had not paid defendant Burks all moneys due him under the contract; that Chapin had not overpaid Burks; that Chapin was not damaged by reason of the failure of defendant Burks to pull the casing and plug the well; that the failure of Burks to pull the casing and plug the well on completion was due to the negligence of Chapin; that, by the acts or statements of Chapin, defendant Burks was induced and did permit his well-drilling machinery to remain idle at said well and location; that $25 per day was the amount usual and customary to pay per day for shutdown time; that Burks was induced by the acts and statements of Chapin to have his well-drilling machinery remain idle on the lease for twenty-five days; and that Chapin was not entitled to exemplary damages.

Upon the answers of the jury, the court gave judgment as follows: Chapin recovered of Burks and Putnam Supply Company, jointly and severally, the sum of $1,200. Putnam Supply Company recovered of Chapin and Burks, jointly and severally, $114.62, the judgment reciting "that said recovery by the plaintiff be and the same is hereby offset against said recovery by the defendants, and that defendant Putnam Supply Company may have its execution against said O. C. Chapin and P. L. Burks for the sum of $114.62, with interest," etc. It was further adjudged that P. L. Burks recover of O. C. Chapin $699.66, with interest, and that O. C. Chapin take nothing against either defendant for exemplary damages. Chapin was denied judgment against Burks for damages for failure to pull the casing and plug the well, and for all other claims.

Appellant contends that the verdict for $1,200 as representing the value of the casing was without support in the evidence. It is contended that the evidence of the defendants themselves showed a reasonable market value of $119.76 more than the amount found by the jury. We are unable to sustain this contention. While it appears that the evidence tended very strongly to show a higher valuation, yet the matter of value was one to be established by opinion evidence, and the testimony of the witness Martin concerning the value of the casing, if believed, justified the finding of $1,200.

We do not believe that it would serve any useful purpose to discuss any of appellant's other propositions, except the third, ninth, tenth, eleventh, thirteenth, and fourteenth. All others are considered as being without merit, and are overruled. By such disposition it is not to be implied that we hold that there was either pleading or proof sufficient to sustain a recovery on any of the claims asserted by plaintiff or the defendant Burks in their supplemental pleadings.

■ Indulging some liberality, the third proposition may be construed to raise the question of the existence of any evidence to support the jury's finding that Chapin agreed with the Putnam Supply Company to become liable for and pay its account. We have had some difficulty in determining whether the question sought to be raised is one of no evidence, or one of the insufficiency of the evidence within the meaning of the distinction pointed out in Hall Music Co. v. Robinson, 117 Tex. 261, 1 S.W.(2d) 857. However, under the authority of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, we have concluded that there is no evidence to support the jury's finding in question. John Brock, manager for the Putnam Supply Company, testified:

"The aggregate amount of that account is $1,302.31. It stands in the name of P. L. Burks on the books. * * * Yes, we sold him those goods. * * * He (Chapin) said to sell to Burks, and 'he will pay you.' * * * Mr. Burks bought the stuff along. Mr. Chapin never objected. Mr. Burks said as soon as he paid him he would pay us. * * * I asked them if they wanted it to go in the name of Burks and Chapin. They said, No, in Burks' name. * * * He never paid Mr. Burks that I know of. He was to pay Burks for the supplies furnished on this well. * * * Absolutely we are suing for judgment against Burks in case Chapin should get a judgment against us. * * * Yes, we just sold goods for the ordinary and reasonable price of the goods and want Chapin or Burks to pay for it. That is what they agreed to do."

"Q. As Chapin paid Burks, you expected Burks to pay for the material? A. No, Chapin agreed to pay for the stuff. It wouldn't come out of the work. He was supposed to pay for the stuff Burks bought. He told me that he would. Yes, I swore on the witness stand before on this case."

"Q. Did you swear on that occasion that Chapin said he would pay? A. I don't know that it was as strong as it is this time. It is because I am talking more this time that it is getting stronger. Yes, before my counsel told me to tell the agreement and I undertook to

tell it. Yes, on the other occasion I said that Chapin was to pay Burks and Burks was to pay us, *what I am swearing this time.* * * * My object in asking Chapin when he was going to pay Burks was to know when I was going to get my money. *Chapin didn't promise to pay me. He promised to pay Burks.* * * * I am swearing today that Chapin said that he would pay me for everything, that he would pay for this material that I was selling Burks. * * * No, I don't know that the only time I ever had a talk with Chapin that he told me that he was to pay Burks for the work Burks was doing on the well and that I could expect to get my money from Burks.

"Question: (Counsel reads): 'And I asked him when he was going to pay Burks and he said he didn't know and that was about all that was said.' Is that what you swore before?' A. Yes, sir. I was to expect my money from Burks. He knew I expected my money after Chapin paid Burks for the material he bought. * * * Yes, I testified on the former trial that the agreement these men had in front of the window there was this was to go on Burks' regular account, *and that Chapin would pay Burks,* and he would go over and pay us. Yes, that is what I testified on the former trial, *and that is what I am testifying now.*"

Burks testified that Chapin told Putnam Supply Company, "if Burks needs anything here let him have it. I will pay him and he will pay you." If there was any testimony to show the existence of the agreement in question, it is contained in the above. It was necessary that Chapin's liability, if it existed, be primary. The agreement, if any, was oral, and the statute of frauds was pleaded. Chapin and Burks were not partners. Under all the evidence, if Chapin owed the debt, Burks did not owe it. Yet it was claimed they both owed it. In view of the last statement of the witness, we do not think that his apparently contradictory statements should be regarded as raising an issue of fact to be submitted to the jury. If there was any evidence at all, it certainly was no more than a mere "scintilla." We do not determine here whether there was any evidence or sufficient evidence to show the agreement as between Burks and Chapin.

■ By appellant's ninth proposition it is contended that, the uncontroverted evidence being that, under the contract between Chapin and Burks, the latter, upon completion of the well, was obligated to pull the casing and plug the well before removing his machinery, plaintiff was entitled to recover under the uncontroverted evidence the sum of $729 as damages for the breach of the contract in failing to do so. Burks contended that Chapin owed him, and that when he, some twenty-five days later, moved his rig and drilling machinery, he refused to pull the casing because Chapin had not paid him. If Chapin was in default in the performance of his part of the contract, Burks was under no duty to further perform his own obligation. In such case he had the right and option to abandon the contract without incurring liability for a failure to further perform. The proposition, therefore is not sustained.

■ Appellant's proposition challenging the right of Burks to recover $25 a day for twenty-five days shutdown time we think should be sustained. In doing so we need not determine whether such an obligation as the one here sought to be enforced can be ingrafted upon a contract by allegations and proof of a custom. Burks could not permit his drilling machinery to lie idle for twenty-five days pending efforts to effect a settlement and collect the money due him, and thereupon abandon the contract, fixing the date of such abandonment so as to charge Chapin with the time no work was done. Had shutdown time been recoverable, it was Burks' duty to pull the casing and plug the well as he was notified to do—thus completely performing all his own obligations under the contract.

■ Appellant further complains of the refusal of the trial court to instruct the jury in connection with the special issue on exemplary damages to the effect that the appropriation of the casing by the defendants was wrongful. Such requested instruction, we think, could not properly be denominated as an explanation or definition of legal terms within the purview of Rev. St. 1925, art. 2189. It may be regarded as thoroughly well settled that, in a case submitted upon special issues, it is not proper to give a general charge, as this was, instructing the jury upon some question of law in order to enable them to answer the issues. Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; J. M. Radford Grocery Co. v. Andrews (Tex. Com. App.) 15 S.W.(2d) 218; Chicago, R. I. & G. Ry. Co. v. Abdou (Tex. Civ. App.) 1 S.W. (2d) 493.

The judgment on its face shows errors that perhaps should be mentioned. In order to conform to the verdict of the jury, the recovery in favor of Putnam Supply Company against Chapin & Burks should have been for $1,302.31, but the judgment as written was for $114.62. Putnam Supply Company, by its pleading, only claimed $1,302.31, and therefore could recover no more. Again Burks did not by his pleading claim that Chapin owed Putnam Supply Company more than $1,027.51 of their account, which was $274.80 less than the account, and therefore, as between Chapin and Burks, must have been the individual debt of the latter. Then manifestly to offset all of Chapin's recovery of $1,200 with the liability of both Chapin and Burks to Putnam Supply Company would result in

Chapin paying a part of Burks' individual debt without the privilege of offsetting same against his liability to Burks for the $699.66. These matters are merely mentioned here that they may be avoided upon the next trial of the case.

For the errors mentioned, the judgment of the trial court will be reversed and the cause remanded, and it is accordingly so ordered.