MAGGIE CARDWELL ET AL. v. GULF, BEAUMONT AND GREAT NORTHERN
RAILWAY COMPANY ET AL.

Decided June 8, 1905.

**1.—Discovered Peril—When Doctrine of, Not Applicable.**

The principle upon which the doctrine of discovered peril is based has no application in the absence of actual knowledge on the part of the person causing the injury of the peril of the person injured in time to prevent the injury by the use of the means within his reach.

**2.—Negligence—Train Operatives—Watchout for Danger to Another Employe.**

Where the engineer and fireman knew that the conductor was riding on the pilot of the engine while the train was being switched, this did not charge them with the duty of keeping a continuous watch on his movements, or require them to anticipate that he would fall from the engine, and to be on the lookout for such an emergency, to the neglect of duties immediately requiring their attention in another direction. They could assume that he understood the danger of his position on the pilot, and they were required only to be careful not to do anything to increase his danger.

Appeal from the District Court of San August' ie. Tried below before Hon. Tom C. Davis.

*J. Felton Lane, W. T. Davis* and *Makemson, Hudson & Lord,* for appellants.—1. Plaintiffs relied for recovery upon the alleged negligence of D. D. Barfield and Frank Flores, who were engaged with said Cardwell, deceased, · at the time of his death in the work of operating the train, engine and cars of defendants, in failing to use all the means at hand to stop said engine and train after they discovered the peril of said Cardwell, and plaintiffs offered sufficient proof in support of said allegation to require the court to submit said question to the jury. Gulf, Colorado & S. F. Ry. Co. v. Miller, 79 S. W. Rep., 1109; San Antonio & A. P. Ry. Co. v. Brock, 80 S. W. Rep., 422; International & G. N. Ry. Co. v. McVey, 81 S. W. Rep., 991; St. Louis & S. W. Ry. Co. v. Jacobson, 66 S. W. Rep., 1111; Chicago, R. I. & T. Ry. Co. v. Long, 74 S. W. Rep., 59; Texas & P. Ry. Co. v. Watkins, 88 Texas, 24; Texas & P. Ry. Co. v. Lively, 38 S. W. Rep., 370; Sayles' Civ. Stats., arts. 4560f, 4560h, 3017.

2. Said Barfield and Flores were guilty of negligence in failing to keep a proper lookout for the safety of Cardwell while he was on the pilot. Missouri, K. & T. Ry. Co. v. Jones, 80 S. W. Rep., 852; Missouri, K. & T. Ry. Co. v. Keaveny, 80 S. W. Rep., 397; San Antonio & A. P. Ry. Co. v. Brock, 80 S. W. Rep., 422.; International & G. N. Ry. Co. v. McVey, 80 S. W. Rep., 991; San Antonio & A. P. Ry. Co. v. Waller, 62 S. W. Rep., 554; St. Louis & S. W. Ry. Co. v. Jacobson, 66 S. W. Rep., 1111; Chicago, R. I. & T. Ry. Co. v. Long, 74 S. W. Rep., 59; Louisville & N. Ry. Co. v. Hurst, 20 S. W. Rep., 817; Texas & P. Ry. Co. v. Lively, 38 S. W. Rep., 370; Texas & P. Ry. Co. v. Watkins, 88 Texas, 24; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Galveston City Ry. Co. v. Hewitt, 67 Texas, 473.

*J. W. Terry* and *F. J. & R. C. Duff,* for appellees.—1. There being

no evidence whatever that any of the employes on the train which caused the injury to V. O. Cardwell actually discovered or saw him in a position of peril, the court did not err in refusing to submit the issue of discovered peril to the jury.   In other words, in order to justify the court in submitting the issue of discovered peril to the jury, the evidence either direct or circumstantial, must have shown affirmatively that the peril of the plaintiff was actually discovered by the appellee. Texas & P. Ry. Co. v. Breadow, 90 Texas, 931; Texas & P. Ry. Co. v. Staggs, 90 Texas, 461; Ft. Worth & D. Ry. Co. v. Shetter, 94 Texas, 197; Missouri, K. & T. Ry. Co. v. Hatton, 95 Texas, 113; Gulf, C. & S. F. Ry. Co. v. Townsend, 82 S. W. Rep., 804.

2. The evidence showed that the deceased, V. O. Cardwell, was injured by his own carelessness and negligence, and not by any act of carelessness or negligence of the engineer and fireman.   Wilson v. Railway Co., 26 S. W. Rep., 753; Washington v. Railway Co., 36 S. W. Rep., 779.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellant, Maggie Cardwell, for herself and as next friend of her minor child, V. O. Cardwell, to recover damages for the death of her husband, the father of said minor.

The suit is against the Gulf, Beaumont & Great Northern Railway Company, the Gulf, Beaumont & Kansas City Railway Company, the Gulf, Colorado & Santa Fe Railway Company and the Old Colony Contracting Company.   The petition alleges in substance that the deceased, V. O. Cardwell, met his death on the 10th day of October, 1902, while in the employment of some or all of the defendants in the capacity of conductor of a railroad train owned and operated by some or all of the defendants, and plaintiff is informed and believes, and so believing charges, that the railroad train in the operation of which the said V. O. Cardwell was killed, was then and there owned and operated by the defendant Gulf, Colorado & Santa Fe Railway Company, and the said Cardwell's death was caused by the negligence of the employes of said defendant.   It is then alleged that if plaintiff is mistaken in the above allegation as to the ownership of said railroad and the responsibility for its proper operation, that it was owned and operated by some one or all of the named defendants, and judgment is asked against the defendant or defendants found to be responsible for the death of said Cardwell.

The allegations as to the circumstances under which Cardwell was killed are, in substance, that while engaged in the work of switching a train on defendant's road and acting in the capacity of conductor, brakeman and switchman, it became proper for him in the discharge of his duties to get upon the pilot of the engine which was drawing said train, and that while so riding upon the engine or in attempting to step therefrom he slipped and fell and was caught and dragged by the engine for a distance of fifty feet and his body was thereby so crushed and mangled as to then and there cause his death.   The negligence alleged and upon which the right of recovery is based was the failure of the engineer and fireman to use proper care to stop the engine after they discovered that Cardwell had fallen therefrom, and in the alterna-

tive the failure of said employes to keep a proper lookout, and as a consequence their failure to discover Cardwell's peril in time to stop the engine before it struck him, and the failure of the defendant to have its train properly equipped with the appliances necessary to stop it suddenly in case of emergency. The amount of damages claimed in the petition is $40,000.

The defendants answered by general denial and by special pleas which, among other defenses, charged that the deceased was guilty of contributory negligence in riding upon the pilot of the engine, and that he assumed the risk incident thereto.

Upon the trial below, after hearing the evidence, the trial judge instructed the jury to find a verdict for the defendants, and upon the return of such verdict judgment was rendered in accordance therewith.

The evidence shows that the deceased, V. O. Cardwell, was killed on October 10, 1902, in the manner and under the circumstances alleged in the petition. The engine which ran over deceased was being operated by D. D. Barfield, engineer, and Frank Flores, fireman. Cardwell was conductor of the train, and it was being switched to allow a train that was meeting it to pass. He was performing the duties of switchman as well as conductor, and had gotten on and off the pilot of the engine several times, presumably for the purpose of placing the switch. As the two trains were passing each other he was seen to slip or fall from his position on the engine and was caught and killed in the manner stated in the petition. At the time he fell the train was moving at the rate of four or five miles an hour, going up a slight grade. He fell just in front of the train and his body was pushed along by the engine for a distance of twenty-four feet. The engine was stopped about sixty-five feet beyond the point at which he fell. It was equipped with proper appliances for stopping it and these appliances were in good condition. There is evidence that the engine could have been stopped within three or four feet by the use of the automatic brakes with which it was equipped.

There is no testimony from which the jury could have found that either the fireman or the engineer saw Cardwell fall, or knew of his having fallen until after he had been killed. The engineer testified that at the time the accident occurred his engine was passing the engine of the other train on the side track, and was moving in the opposite direction. He further testified:

"I thought this engine was going south of this switch stand to take up a water pump there, and I knew that I would have to take care of my engine some way, so I holloaed to ask if he was going to take up the pump. I knew that I could tell by the way his mouth worked whether he was going to move the pump or not. While waiting for his answer it was then that Mr. Cardwell fell from the pilot of my engine; he stepped up on the pilot and fell off in front of the pilot in a sitting position, with his back toward the pilot, and the engine moving at the rate of four or five miles per hour, he was struck in the back by the pilot, crushed down and the engine passing over his body he was killed. I was looking out on the left hand side of the cab of my engine at the engineer of the other engine on the sidetrack, waiting for his answer to a question I had asked him. The other engineer was standing

in what is known as the gangway. The last time that I saw Mr. Cardwell before his injuries he was standing on the right side of the pilot, erect, with one hand on the handhold. I did not see him fall. The first time I saw him after he fell was after they got him out from under the engine. I first knew of the accident by hearing the conductor of the other train holloaing in a tone of voice that warned me that something was wrong. I applied the emergency brake and stopped the train as quickly as brakes could be applied. Mr. Cardwell's body, when I saw him, was by the first front wheel of the tender. On my engine I could not see a person lying or sitting on the ground immediately in front of the pilot without getting up off the box, and I did not and could not see Mr. Cardwell in that position any time after he fell. Did not know that he had fallen until I heard Mr. Bennington holloa. The fireman on my engine could not, from his box, see a man standing on the pilot, on the right hand side of the pilot. I heard the voice of Mr. Bennington and knew there was something wrong and stopped as quickly as air brakes could stop. I applied the brakes the minute I heard him halloa; I took it to be danger. There would have been no danger to myself and fireman to stop that train as quickly as possible at the rate we were running. I did not hear Mr. Cardwell cry out. The fireman was on his seat box. I supposed that Frank Flores was looking out for the car I had called his attention to; I told him to keep a lookout until all the cars were clear. A body could not be seen from that engine if lying right in front of the pilot of the engine. It would be something like fifteen feet ahead of the engine that a person on the track could be seen by the engineer and fireman. On last Saturday afternoon I made the test as to whether or not a man in front of the pilot of the engine could be seen from the engine. I could see about that much (about six inches below the waist line) of the body of a man standing on the pilot."

The fireman Flores was not a witness in the case. No witness testifies that either the engineer or fireman saw Cardwell fall or that either of them was looking towards the front of their train at the time he fell, and the evidence is undisputed that he could not have been seen by a person on the engine after he fell upon the track.

We think it clear that the evidence does not raise the issue of discovered peril. The principle upon which the doctrine of discovered peril is based has no application in the absence of actual knowledge, on the part of the person causing the injury, of the peril of the person injured in time to prevent the injury by the use of the means within his reach. Railway Co. v. Breadow, 90 Texas, 27; Railway Co. v. Staggs, 90 Texas, 461; Railway Co. v. Shetter, 94 Texas, 197; Railway Co. v. Hatton, 95 Texas, 113; Railway Co. v. Townsend, 82 S. W. Rep., 804.

There is no evidence to sustain a finding of negligence on the part of the railroad company or the operatives of the train upon either of the other grounds alleged in the petition. All of the evidence shows that the appliances for stopping the train were of the proper kind and in good condition; but were the facts otherwise, no liability would be shown, because under the undisputed evidence the peril of the deceased was not

discovered in time to have prevented his death by the use of any possible means.

We do not think the evidence shows any negligence on the part of the engineer or fireman in failing to sooner discover the fact that deceased had fallen from the engine. It is true that the engineer knew that Cardwell was riding on the pilot of the engine, and he was charged with knowledge of the fact that this was an insecure and dangerous position, but it is clear from the evidence that at the time he fell the duties of both the engineer and fireman required them to look in a different direction from the front of the train. Cardwell was the conductor and directed the movements of the train, and the fact that he may have placed himself in a more dangerous position than the proper discharge of his duties required did not charge the operatives of the train with the duty of keeping a continuous watch upon his movements to the neglect of other duties of their employment, the performance of which the situation might demand. They could assume that Cardwell understood the insecurity and danger of his position upon the engine and would take every precaution to keep from falling therefrom, and while they were required to be careful not to do anything to increase his danger, they were not required to anticipate that he would probably fall while the train was being operated in a careful manner, and to be on the lookout for such an emergency. There is neither allegation nor proof that the train was not being operated in a careful manner at the time the deceased fell.

We are of opinion that the evidence raised no issue of liability against any of the defendants and the trial court properly directed a verdict in favor of them all. Such being our conclusion, it follows that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.